UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ELIZABETH KISH, et al., | ) | Case No. 5:00 CV 2047 |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| vs. | ) | O R D E R |
|  | ) | (Resolving Docket No. 85, 86, 101) |
| CITY OF AKRON, et al., | ) |  |
|  | ) |  |
| Defendants. | ) | Magistrate Judge James S. Gallas |
|  | ) |  |

Plaintiffs, Elizabeth Kish and Victoria Elder, former employees of the City of Akron Plans and Permits Division, brought suit against the City of Akron and George Jumbert, their former supervisor, alleging: (1) violation of the Fair Labor Standards Act ("FLSA") by nonpayment of overtime compensation; (2) retaliation for raising FLSA issues; (3) destruction of public records (compensatory time records) in violation of state record retention statutory provisions; and (4) spoliation of evidence (compensatory time records).   Plaintiffs maintained that the City of Akron Plans and Permits Division had a compensatory time procedure for hours worked in excess of the standard work day which it discontinued pursuant to the terms of a collective bargaining agreement.  Plaintiffs alleged after the cessation of the compensatory time procedures and the substitution of overtime compensation under the collective bargaining agreement, they accumulated compensatory time which should have been paid to them as overtime compensation.  An employee of the city responsible for maintaining and retaining compensatory time records, Ms. Stevens, admitted to destroying the records relating to plaintiffs after the grievance process was initiated.   Prior to trial, the Court dismissed plaintiffs' state

5:00 CV 2047                                    2

law-based claims against Mr. Jumbert for destruction of public records and spoliation of evidence, dismissed plaintiff Elizabeth Kish's retaliation claim  under the FLSA against both defendants, and dismissed plaintiff Victoria Elder's claim of retaliation under the FLSA regarding the denial of her request for leave. A jury trial followed on the remaining  issues concluding with the following verdict:

1.  Violation of FLSA: Found for Plaintiffs and awarded compensatory damages of $493.35 to Kish and $414.98 to Elder.

2.  Destruction of Public Records: Found for Plaintiffs and awarded $480,000.00 to Kish and $380,000.00 to Elder.

3.  Spoliation of Evidence: Found for Plaintiffs and awarded compensatory damages of $500.00 each to Kish and Elder and punitive damages of $480,000.00 to Kish and $380,000.00 to Elder.

Defendant City of Akron has moved for new trial or *remittitur* (Docket No. 85), filed a renewed motion for judgment as a matter of law to dismiss the award of damages for spoliation of evidence (Docket No. 86), and has moved to amend the pleadings to include sovereign immunity (Docket No. 101).  Plaintiffs oppose all three motions.

*Amendment Be Allowed to Include Ohio's Political Subdivision and Tort Liability Act:*

The City contends that is entitled to a new trial under Rule 59(a) for the reason that any legal action against it is governed under Ohio's Political Subdivision Tort Liability Act (Chapter 2744 of the Ohio Revised Code) which confers both immunity from punitive damages pursuant to Ohio Rev. Code §2744.05(A), and protects it from any liability whatsoever under Ohio Rev. Code §2744.02(A)(1). First,  §2744.05(A) prohibits an award of punitive or exemplary damages in connection with a

5:00 CV 2047                                    3

governmental or proprietary function performed by a political subdivision.  Plaintiffs counter pointing

out that this defense was not raised in the answer and was therefore waived.  In response the City

seeks to amend the pleadings to include this defense, and to include sovereign immunity under Ohio

Rev. Code § 2744.02(A)(1) (Docket No 103).  Under Ohio procedural law, the City would not be

allowed to amend to raise the statutory immunity conferred by Chapter 2744 following trial.  See

*Turner v. Central Local School District*, 85 Ohio St.3d 95, 97, 706 N.E.2d 1261 (1999).

However, *Turner* is far more restrictive than federal procedural law.  The Sixth Circuit has allowed

amendment to assert  immunity after trial.  See *Popovich v. Cuyahoga County Ct. of Common*

*Pleas Domestic Rel. Div.,* 276 F.3d 808, 817 n. 8 (6th Cir. 2002).  Sovereign immunity similar to

Eleventh Amendment Immunity "sufficiently partakes of the notice of a jurisdictional bar" and therefore

sovereign immunity may be raised at any time.  See *Kovacevich v. Kent State Univ.*, 224 F.3d 806,

816 (6th Cir. 2000) (discussing Eleventh Amendment Immunity); *Wisconsin v. Dept. of Corrections*

*v. Schacht,* 524 U.S. 381, 393-94, 118 S.Ct. 2047, 2055, 141 L.Ed.2d 364 (1998) (Kennedy, Jr.,

concurring) (discussing Eleventh Amendment Immunity).  Accordingly, the Court must accept the

belated assertion of sovereign immunity.  Accordingly, the motion to amend (Docket No. 101) is

granted.


         Moreover, amendment is permissible under Rule 15(b) of the Federal Rules of Civil Procedure

to conform to the evidence presented at trial.  The applicability of Ohio Revised Code, Chapter 2744

5:00 CV 2047                                    4

was argued, by both plaintiffs and the City in composing jury instructions.   Therefore, the City's

answer is deemed to be implicitly amended due to the arguments of counsel on the evidence.


*Civil Action Exempt From Sovereign Immunity*:

First, there is no immunity for destruction of public records in violation of Ohio Rev. Code

§149.351(B) since §2744.02(B)(5) excepts these situations where liability is expressly imposed upon

the political subdivision by a provision of the Ohio Revised Code.


Second, the Court found plaintiffs' spoliation of evidence claims exempt from sovereign

immunity under Ohio Rev. Code §2744.09 and the City maintains that the Court must revisit the

exceptions contained in Ohio Rev. Code §2744.09.  The pertinent provisions at issue read:

> This chapter does not apply to, and shall not be construed to apply to, the
> following: . . .
>
> (B) Civil actions by an employee, or the collective bargaining representative
> of an employee, against his political subdivision relative to any matter that
> arises out of the employment relationship between the employee and the
> political subdivision;
>
> (C) Civil actions by an employee of a political subdivision against the political
> subdivision relative to wages, hours, conditions, or other terms of his
> employment;

The doctrine of sovereign immunity in Ohio is based on statute and co-extensive with the

statutory parameters of Chapter 2744 since March 20, 1985.  See *Greyhound Food Management,*

5:00 CV 2047                              5

*Inc. v. City of Dayton*, 852 F.2d 866, 868 (6th Cir. 1988).  Plaintiffs continue to contend that

§§2744.09(B) and (C) exempt their case from imposition of sovereign immunity.


The City has raised a new legal argument citing *Engleman v. Cincinnati Bd. of Ed.*, 2001

WL 705575 (Ohio App. 1 Dist. June 22, 2001), *appeal dismissed*, 93 Ohio St.3d 1452 (Table

2001), and *Ellithorp v. Barberton City School Dist. Bd. of Ed.*, 1997 WL 416333 ( Ohio App.

9 Dist. July 9, 1997), *appeal dismissed,* 80 Ohio St.3d 1445 ( Table 1997),  for the proposition that

plaintiffs' spoliation of evidence claims do not arise out of the employment relationship nor are they

"relative to wages, hours, conditions or other terms of employment."    A line of cases has developed

from the Ohio Supreme Court decision of *Brady v. Safety-Kleen Corp.*, 61 Ohio St.3d 624, 576

N.E.2d 722 (1991), which held that intentional torts are not part of the employment relationship and

therefore excluded from coverage under Workers Compensation provisions.  This line of state cases

has held that §2744.09(B) does not exempt *intentional* torts because as a matter of law, an

intentional tort always arises outside of the employment relationship and therefore sovereign immunity

precludes recovery against the political subdivision.  See also, *Abdalla v. Olexia*, 1999 WL 803592

(Ohio App. 7 Dist. Oct.6, 1999); *Ventura v. City of Independence*, 1998 WL 230429 (Ohio App.

8 Dist. May 7, 1998); *Fabian v. City of Steubenville,* 2001 WL 1199061 (Ohio App. 7 Dist. Sept.

28, 2001); *Carney v. Cleveland Hgts.- Univ. Hgts. City School Dist.*, 143 Ohio App.3d 415, 758

N.E.2d 234 (Ohio App. 8th Dist. 2001), *appeal dismissed*, 93 Ohio St.3d 1427 (Table 2001). "An

intentional tort is based on  conduct that is 'other than negligent.'" *Engleman,* 2001 WL 705575*4.

5:00 CV 2047                                6

On the other hand, plaintiffs rely on several cases which construe "employment relationship" more broadly.  See *Marcum v. Rice*, 1999 WL 513813 (Ohio App. 10 Dist. July 20, 1999), *appeal dismissed*, 87 Ohio St.3d 1449 ( Table 1999)(defamation as a result of mayoral investigation arose out of employment relationship); *Nungester v. City of Cincinnati*, 100 Ohio App.3d 561, 654 N.E.2d 423 (1st App. Dist. 1995) (claims of malicious prosecution, false arrest and intentional infliction of emotional distress brought by police officer against city were barred since they were "purely personal rights that in no way were created by or dependent upon the existence of his employment relationship with the city.") *Patrolman "X" v. Toledo*, 132 Ohio App.3d 374, 725 N.E.2d 291 (Ohio App. 6  Dist. 1999) (intentional publication of sexual assault allegations arose out of employment relationship with city); *Ross v. Trumbull County Child Support Enforcement Agency*, 2001 WL 114971 (Ohio App. 11 Dist. Feb. 9, 2001), *appeal dismissed*, 92 Ohio St.3d 1414 (Table 2001).

Under the line of cases employing the reasoning urged by the City spoliation of evidence is an intentional tort and it cannot "arise out of the employment relationship" to activate the exemption of §2744.09(B).  As explained in *Fabian v. City of Steubenville*, the wording of §2744.09(B) "exists to maintain the integrity of the Workers' Compensation system," just as the wording of §2744.09(C) "exists to maintain the integrity of the collective bargaining system."  *Id.*, 2001 WL 1199061*4.  On issues of state law, state supreme court decisions are controlling.  *Erie Railroad Co.  v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Acme Roll Forming Co. v. Home Ins. Co.*, 31

5:00 CV 2047                                        7

Fed. Appx. 866 (6th Cir. 2002).  When the state's supreme court has not spoken on the issue with sufficient clarity, the federal court must "ascertain from all available data what the state law is and apply it." *Bailey v. V&O Press Co., Inc.*,  770 F.2d 601, 604 (6th Cir. 1985).  This includes review of state appellate court decisions and the federal court may rely on such indicia of state law unless there is persuasive data that the state supreme court would decide the issue otherwise.  *Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002); *Chandler v. Specialty Tires of America ( Tennessee), Inc.*, 283 F.3d 818 (6th Cir. 2002).


Ohio follows the general rule of statutory construction that "all statutes which relate to the same general subject matter must be read in *pari materia*."  *Cater v. City of Cleveland*, 83 Ohio St.3d 24, 29, 697 N.E.2d 610, 615 (1998); *Johnson's Markets, Inc. v. New Carlisle Dept. of Health*, 58 Ohio St.3d 28, 35, 567 N.E.2d 1018, 1025 (1991).  As demonstrated in *Fabian v. City of Steubenville*, §2744.09(B) and §2744.09(C) are worded to align with workers compensation and collective bargaining statutes respectively. The Court finds that the more persuasive indicia of state law favor those appellate court decisions following the rationale urged by the City. Since the tort of spoliation of evidence is an intentional tort, it is not exempt under Ohio Rev. Code §2744.09(B).


The next issue is exemption under §2744.09(C) for "civil actions by an employee of a political subdivision against the political subdivision relative to wages, hours, conditions, or other terms of his employment."   The appellate court in *Fabian v. City of Steubenville* explained:

Chapter 4117 of the Revised Code is the Public Employees Collective Bargaining Act. Under that Chapter, all subjects which 'affect wages, hours, terms and conditions of employment,' require collective bargaining. *Deeds v. City of Ironton* (1988), 48 Ohio App.3d 7, 11. This is virtually identical language to that contained in R.C. 2744.09(C) which allows an employee to sue when the suit deals with 'wages, hours, conditions, or other terms' of employment. When interpreting this language in the collective bargaining context, courts have held things such as residency requirements are conditions of employment. *St. Bernard v. State Emp. Rel. Bd.* (1991), 74 Ohio App.3d 3. Both the language of the statute and the court decisions make clear that the term 'conditions of employment' refers to the conditions an employee must meet to maintain employment, not the conditions an employee works within.

Fabian argues for a 'plain meaning' reading of R.C. 2744.09(B) instead of applying the technical meaning of the terms. As discussed above, these statutory subsections implicitly refer to other chapters of the Revised Code where courts have defined their meanings. 'Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.' R.C. 1.42. We must apply the meanings given to these phrases in the workers' compensation and collective bargaining to the present context as well instead of the plain meaning advocated by Fabian. Therefore, neither R.C. 2744.09(B) or (C) strips the City of immunity from Fabian's intentional tort claims. Fabian's first assignment of error is meritless.

In contrast, no condition of employment is at issue here. Rather, the "civil action" relates clearly to wages and less directly to hours. Plaintiffs' case for unpaid compensatory time, unlike the situation in *Fabian v. City of Steubenville*, did involve a matter "relative to wages, hours . . ." Further, it cannot be ignored that in subsection 2744.09(C) the state legislature referred to *"civil actions"* (emphasis supplied) whereas in §2744.09(E) the state legislature referred to *"civil claims"* (emphasis supplied). The spoliation of evidence clearly was part of a civil action "relative to wages, hours." Plaintiff's "civil action" arose over unpaid compensatory time/overtime issues and became a

5:00 CV 2047                                      9

matter taken up in union grievance proceedings.  The root of the dispute was the changeover from a compensatory time system to an overtime compensation system under the terms of a collective bargaining agreement. Accordingly, pursuant to Ohio Rev. Code §2744.09(C), plaintiffs' "civil action" is exempt from  sovereign immunity conferred under Chapter 2744.


*Inconsistency of Jury Instructions Regarding Liability for Destruction of Public Records and Spoliation of Evidence*:

In both the motion for new trial and in its renewed motion for judgment as a matter of law the City argues that the Court instructed the jury that in order to find the City liable for destruction of public records the jury had to find that the employee Ms. Stevens was acting within the scope of her employment when she discarded the records (Jury Instructions at 66).  The City also points out that the Court instructed  the jury that in order to find the City liable to plaintiffs for punitive damages relating to their claim for spoliation of evidence, the City had to have acted with malice (Jury Instructions at 79).  The City points out the jury found for plaintiffs on both claims and awarded compensatory and punitive damages which it maintains is inconsistent.  If Ms. Stevens acted with malice when she discarded the records in question, the City argues that she could not have been acting within the scope of her employment. Further the City contends there was nothing to demonstrate that the City "authorized, participated in or ratified the acts of Ms. Stevens in discarding the records relative to the spoliation of evidence claim.  The City's argument asks whether Ms. Stevens can be found by the jury to have both acted maliciously and simultaneously within the scope of her employment.

5:00 CV 2047                                   10

The City's reasoning overlooks the fact that neither the destruction of records claims under §149.351 nor the spoliation of evidence claim are affected by the sovereign immunity provisions of Ohio Rev. Code §2744.  As explained above, plaintiffs' "civil action" was exempt due to §2744.09(C) from the  immunity generally conferred by §2744.02(A)(1).

Next, before reaching the issue of inconsistency in the jury's findings, the City contends that the plaintiffs did not provide a legally sufficient evidentiary basis for the jury, because the person who discarded the records, Ms. Stevens, had no knowledge of probable litigation nor discarded the records to disrupt plaintiffs' potential case. Without question this was a pivotal point of the trial.  The jury though simply did not believe Ms. Stevens.  The dispute over the compensatory-to-overtime pay conversion had arisen before Ms. Stevens assumed plaintiff Victoria Elder's responsibilities including those as record custodian.  According to Ms. Stevens, one of her first actions was to destroy plaintiffs' records.  Plaintiffs had evidence to contradict this statement showing a much later record destruction date, but in any event, the destruction of employee records by the record custodian was contrary to City policy.  Even if as Ms. Stevens claims one of her first actions as record custodian was to destroy plaintiffs' employment records, this action was at least unusual.  What followed, or more precisely did not follow, was significant.  After the record destruction was admittedly discovered, no disciplinary action or even an admonishment was given to Ms. Stevens.  Her supervisor expressed no displeasure with her actions, nor did any higher ranking City official express distress. Plaintiffs had established that higher ranking City officials had knowledge of probable litigation involving plaintiffs' overtime dispute.

5:00 CV 2047                                    11

 The jury simply found that Ms. Stevens' testimony was incredible especially since no wrong-doing

on her part was ever acknowledged.  The City's comment that it is nigh impossible to take action

against a civil service employee simply did not persuade.  Not even an unfavorable comment was

entered in Ms. Stevens' personnel files after the City admitted that it discovered what Ms. Stevens had

done.  Inferences from the evidence could lead the jury to find the records of the two provocateurs

were destroyed in an ill-conceived effort to terminate the prolonged overtime pay dispute.  Therefore,

the jury could infer the worst, that the spoliation of evidence was both due to pending or probable

litigation, was the result of a willful destruction of evidence designed to disrupt the plaintiffs' case, and

had been authorized by an official over Ms. Stevens (or the destruction of records was done by a

higher ranking official) who was protecting her from adverse employment action even at the time of

trial on condition she continue the deception. "Judgment as a matter of law should be granted only

where a reasonable juror, relying on the evidence put forth at trial could not find for the plaintiff on

each of the elements of her claim." *Buntin v Breathitt County Bd. of Ed.*, 134 F.3d 796, 798 (6th

Cir. 1998)( internal cites omitted); *Gregory v. Shelby County, TN*, 220 F3d 433,441 (6th Cir.

2000).  The Court must make all reasonable inferences in favor of the nonmoving party. *Id.*

Accordingly, there was sufficient evidence to establish the elements of spoliation of evidence, and the

Court must move to the question of simultaneous malice and action within the scope of employment.


        The City's argument is that Ms. Stevens' actions could not bind the City.  The Court did

borrow upon §2744.03(A)(5) in instructing the jury on the element of malice, which provides:

5:00 CV 2047                                    12

> The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith or in a wanton or reckless manner.

Ohio Rev. Code §2744.03(A)(5).

The Court understands that generally when there is an intentional tort, §2744.02(A)(1) governs and the effect of §2744.02 is to disallow any recovery against a municipality.  Generally, it is unnecessary to address the "non-malicious purpose" defense under §2744.03(A)(5) in situations where there is no §2744.02(B) exception.  E.g., *Sargi v. Kent City Bd. of Ed.*, 70 F.3d. 907, 913 (6th Cir. 1995).  Since the §2744.02(A) immunity was unavailable the Court believed that this did not eliminate the element of malice, so requiring plaintiffs to prove that the City's actions were exercised with malicious purpose as provided by statute.  The jury found that the spoliation was malicious, and there was evidence to support that finding.

The City, though, citing *Byrd v. Faber*, 57 Ohio St.3d 56, 556 N.E.2d 584  (1991) argues that when the tort is intentional, under the doctrine of  *respondeat superior*, the tort must be "calculated to facilitate or promote the business for which the servant was employed."  *Id.* at 58.  The Court did instruct the jury to consider whether the record destruction was unauthorized and the City would only be liable if the action was within the scope of employment.  The Court's instructions to the jury followed those proposed by the City.  They included that the City maintained that the record

5:00 CV 2047                                    13

destruction was an unauthorized act and that the employee's actions must be within the scope of employment.  The Court also gave the scope of employment instruction suggested by the City that, "an employee is not within the scope of his or her employment when the employee clearly and completely departs from the services or job that employee was hired to do.  When an employee acts solely for his or her own purpose, or solely for the purpose other than the employer, the employee does not act within the scope of his or her employment, and the employer is not liable for the employee's act."  (Jury Instruction at 69).  The Court finds that the intent behind *Byrd* was conveyed to the jury, as the City had requested.


        Obviously if a political subdivision is not immune when judgment or discretion is exercised with malicious purpose, in bad faith, or in a wanton or reckless manner, and a political subdivision acts only through its employees, then it is possible to have a situation in which an employee acts maliciously and these actions are within the scope of employment and attributable to the municipal employer.  This is without question inconsistent with the intentional tort exception to §2744.09(B).  However, since exemption exists under §2744.09(C), a malicious tortious act may serve as the basis for liability.  The Court though is not obligated to rationalize or explain any internal inconsistency in Ohio's sovereign immunity provisions, but need only apply them in the same fashion as it anticipates the Supreme Court of Ohio would, which on the whole is hostile to sovereign immunity.

5:00 CV 2047                                        14

The City though attempts to refute the obvious from a different angle pressing its argument based on *Virostek v. Liberty Township Police Dept.*, 14 Fed. Appx. 493 (6th Cir. July 11, 2001), *Spires v. City of Lancaster*, 28 Ohio St.3d 76, 502 N.E.2d 614 (1986) and *Drain v. Kosydar*, 54 Ohio St.2d 49, 374 N.E.2d 1253 (1978), that in the absence of statutory authority providing for an award of punitive damages, an injured plaintiff has no right to recover punitive damages against a municipality. The City argues that the Court's interpretation of the state statutory scheme rendered §2744.05 meaningless and contradicted longstanding public policy disallowing punitive damages against a municipality.

*Virostek* is based on the statutory prohibition against punitive damages under §2744.05(A) and federal policy. *Spires* and *Drain* held that punitive damages could not be assessed since actions taken with malice by the municipal employee are necessarily outside the scope of employment.

First, the state legislature certainly could have extended the prohibition against punitive damages under the exemption provisions in §2744.09(A) through (D). However, the state legislature made no provision to retain that immunity when it made Chapter 2744 inapplicable to state-law based employment actions and suretyship actions (§2744.09(E) exempts "claims" based on the constitution and statutes of the United States).

5:00 CV 2047                                          15

Second, *Spires* and *Drain* are based on former sovereign immunity law.  Sovereign immunity was a matter of state common law for municipalities created in 1854 but that law was judicially abolished in 1982.  See *Haverlack v. Portage Homes, Inc.*, 2 Ohio St.3d 26, 442 N.E.2d 749 (1982); *Butler v. Jordan*, 92 Ohio St.3d 354, 359, 750 N.E.2d 554, 559 (2001).   While under former law, malice may have excused a municipality from liability, Ohio Rev. Code §2744.03(A)(5) has changed that and made malice a prerequisite to piercing immunity.  As explained earlier, malicious actions may or may not be outside the scope of employment and the jury was instructed that it had to find both that the record destruction was malicious and performed in the scope of employment. Therefore, there was no inherent inconsistency in those instructions on which to have a new trial or to enter judgment for the City as a matter of law.

In the Court's view the City is attacking the very instructions it proposed and if there was error, it was invited error.


*Trial Court Erred by Not Instructing the Jury that the Term "Violation" as Contained in Ohio Rev. Code §149.351 Refers to Each Transaction:*

The City argues that the evidence fully demonstrated that the records in question were discarded in one transaction or occurrence thus constituting one violation, whereas in contrast the jury came to the legal conclusion that each page discarded constituted a violation and awarded damages accordingly.  The City's legal argument is a repetition of the argument presented in summary judgment. However, the decision on which the City relied was recently reversed in *State ex rel. Hunter v. City of Alliance*, 2002 WL 391692 (Ohio App. 5 Dist. March 11, 2002).

5:00 CV 2047                                    16

In supplemental briefing the City argues that the Court should have instructed the jury on the "relevant unit of measure."  The appellate court in *Hunter* developed the "unit of measure approach" stating that the agenda and the minutes of a meeting together formed the "record" of each meeting of the Alliance Community Hospital Board concerning use of eminent domain to acquire property.  The appellate court held that the meeting itself was a relevant unit of measure not the number of documents which describe the meeting.  Obviously the appellate court opted for a transactional approach finding it was illogical to separate the agenda and the minutes since they both constituted the "record" of the meeting.  This contrasts to the case at bar where clearly each compensatory time record concerned a separate event, i.e. overtime or leave.  The City's argument that the fact that employee's records were destroyed at one time is irrelevant to whether or not they constituted separate records.  Clearly each record in and of itself was a unit of measure, as explained by the witnesses.  Accordingly there is no basis for new trial.  The jury instructions were correct and it would be pointless to give a "unit of measure" instruction under these circumstances.

*Punitive Damages Bear No Reasonable Relationship to the Compensatory Damage Award and Constitute Double Recovery*:

The City argues that based on the standards of *BMW of North America v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d. 809 (1996), it is "blatantly clear" that the punitive damage award of $380,000.00 and $480,000.00 to each plaintiff respectively on the spoliation of evidence claim was grossly excessive in light of the award of $500.00 each in compensatory damages.  The City recites the three *Gore* factors of degree of reprehensibility of the conduct, the disparity between the harm or

5:00 CV 2047                                      17

potential harm suffered by the plaintiff, and the difference between the punitive damages and civil

penalties authorized or imposed in comparable cases,  *Gore*, 517 U.S. at 575-85, and focuses

particularly upon the comment in *Gore* that in "most cases, the ratio will be within a constitutionally

acceptable range, and remittitur will not be justified on this basis.  When the ratio is a breathtaking 500

to 1, however, the award must surely 'raise a suspicious judicial eyebrow.'" *Gore*, 517 U.S. at 583;

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 436, 121 S.Ct. 1678,

1684-85, 149 L.Ed.2d 674 (2001)*; TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S.

483, 481, 113 S.Ct. 2711, 2732, 125 L.Ed.2d 366 (1993) (O'Connor, J. dissenting).  Plaintiffs

counter with state precedent which would allow a ratio of 6,000 to 1.  However, based on federal due

process which was the basis for the decision in *Gore*, judicial eyebrows certainly are indeed raised.

However it is not just the disparity that concerns the court.  The third factor includes consideration of

the difference between the punitive damages awarded by the jury and the civil penalties authorized or

imposed in comparable cases.  The comparable civil penalty is contained in Ohio Rev. Code

§149.351 with its $1,000.00 per violation statutory amount of damages.[1]


        "A reviewing court engaged in determining whether an award of punitive damages is excessive

should 'accord substantial deference' to legislative judgments concerning appropriate sanctions for

------

[1] The City counters referring to Ohio Rev. Code §2744.05(C)(1) which sets a damage cap of $250,000.00 in favor of any one person.  However, the City overlooks that §2744.05(A) provides that punitive or exemplary damages shall not be awarded so this cap refers to the other forms of damage that do not represent the actual loss to the person.  In any event, this "civil action" was exempted under §2744.09(C) from the application of those provisions of this chapter.

5:00 CV 2047                                        18

the conduct at issue.'" *Gore*, 517 U.S. 583, 116 S.Ct. at 1603; *Browning-Ferris Industries of VT, Inc. v. Kelko Disposal, Inc.*, 492 U.S. 257, 301, 109 S.Ct. 2909, 2934 ( 1989).  The jury awarded identical damages of $380,000.00 and $480,000.00, respectively to plaintiffs as both punitive damages for the spoliation of evidence and for the destruction of records under Ohio Rev. Code §149.351(B).  Although it certainly could be argued that the sanction for comparable misconduct authorizes this large punitive award, it also raises the concern of double recovery as governed by state law.  In *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134,  677 N.E.2d 308 (1997), the Ohio Supreme Court recognized that impermissible dual recovery for tortious claims can result when there is both a state common law claim for wrongful discharge and a statutory claim for liability under Ohio's Whistleblower's Act.  Syllabus No. 5 of *Kulch* provided "an at-will employee who was discharged or disciplined in violation of R.C. 4113.52 may maintain the statutory cause of action for the violation, a common law cause of action tort, or both, but is not entitled to double recovery."  *Id.*  The protection against double recovery as a matter of state law in state law-based claims must be incorporated into the third factor of *Gore* concerning civil penalties.

Plaintiffs counter that the destruction of evidence and spoliation of evidence share somewhat different elements.  However, discharge of an at-will employee and the Whistleblower Act also contain somewhat different elements. See *Forshey v. Airborne Freight Corp.*, 142 Ohio App.3d 404, 412, 755 N.E.2d 969, 976 ( Table 2001), appeal dismissed, 93 Ohio St.3d 1418, 754 N.E.2d 263 (2001).  What matters is that both recoveries were based on the same transaction.  The Court finds

5:00 CV 2047                                    19

that the identical award for punitive damages for plaintiffs' spoliation claim and for destruction of records is obviously more than coincidental and constitutes double recovery. The jury awarded the same amount for both the statutory violation and the common law punitive damage claim.  While Ohio law permits both  to be brought, only one recovery is permissible.  Accordingly, considering both double recovery and the excessiveness of the award under federal standards, the Court orders *remittitur* of the award under the statutory claim for destruction of public records (the lesser amount recovered on the two state law-based claims).  However, plaintiffs retain their ability to seek attorney fees as costs since they did establish a violation of the statutory obligation.  Accordingly, the request for *remittitur* is granted, and the motion to amend the complaint is granted, but the motion for new trial is denied.   The award to plaintiff Ms. Kish is reduced  $480,000.00 and the award for plaintiff Ms. Elder is reduced $380,000.00.


      IT IS SO ORDERED.

                                        s/James S. Gallas
                                 United States Magistrate Judge

Dated:  May 2, 2002