NOT RECOMMENDED FOR PUBLICATION

**FILED**

AUG 1 6 2006

LEONARD GREEN, Clerk

INFORMATION COPY
MAND... NOT YET ISSUED
DIS. CT. # 00-2047

Nos. 02-3631/3632

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ELIZABETH KISH; VICTORIA ELDER,

    Plaintiffs-Appellants/
    Cross-Appellees,

v.

CITY OF AKRON,

    Defendant-Appellee/
    Cross-Appellant

GEORGE JUMBERT,

    Defendant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

**BEFORE: NORRIS, GILMAN and ROGERS, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** This appeal involves a substantial jury award made to two clerical employees of Akron's Department of Public Services. Plaintiffs Victoria Elder and Elizabeth Kish worked respectively as a data entry clerk and secretary in the department's Plans and Permits Division ("the Division"), which was managed by defendant George Jumbert.[1] They appeal from an order partially granting a request for remittitur that reduced Kish's damage award by $480,000 and the award to Elder by $380,000. Despite the substantial remittitur, the amended judgment entry still awards Kish $493.35 under the Fair Labor Standards Act of 1938 ("FLSA"), 29

---

[1] Jumbert is not party to this appeal.

*Nos. 02-3631/3632*
*Kish v. City of Akron*

U.S.C. §§ 201-219, and $480,500 for spoliation of evidence; Elder's amended award is $414.98 for her FLSA claim and $380,500 for spoliation.

In a cross-appeal, the City contests the proper construction of Ohio Rev. Code § 149.351, which prohibits the removal or destruction of public records and prescribes penalties for doing so. Beyond that, the City contends that the trial court erred when it permitted the jury to consider plaintiffs' spoliation claims; that the statutory immunity provided by Ohio Rev. Code § 2744.05(A) applies in this case; and, lastly, that the jury's award of punitive damages was so excessive that it violates the Due Process Clause of the Fourteenth Amendment.

On April 29, 2004, this court issued an order certifying several questions to the Supreme Court of Ohio pursuant to Rule XVIII of that Court's Rules of Practice. The Court accepted two of the six questions posed in our order. Both questions relate to the meaning of terms used in Ohio Rev. Code § 149.351. Having recently received guidance from the Court, *Kish v. City of Akron*, 846 N.E.2d 811 (Ohio 2006), we are now in a position to resolve the appeal.

I.

At its core, this dispute concerns the manner in which plaintiffs were compensated for overtime. During the period at issue, the Division maintained an informal system of recording compensatory time. Rather than report it to the Finance Department as required by the City's personnel policy, the Division kept compensatory time records in a file folder within the office. In fact, for part of her tenure, Elder kept track of the records herself. According to Jumbert's trial testimony, the policy afforded employees more flexibility in the way that they chose to use their accrued compensatory time. He conceded, however, that a City ordinance required that employees

- 2 -

*Nos. 02-3631/3632*
*Kish v. City of Akron*

who worked overtime be compensated at time and a half while the informal program only compensated them on an hour for hour basis; the collective bargaining agreement between the City and municipal employees' union incorporated the terms of this ordinance as well.

In the fall of 1996, Kish questioned Jumbert about why her compensatory time did not appear on her pay stub when other records, such as sick leave and vacation time, did. According to her testimony, he explained that employees were compensated hour for hour under the informal program, not at the time and a half rate that was due. Kish, who was a member of the Civil Service Personnel Association, Inc. ("the Union"), contacted a representative but did not file a formal grievance.

Although Kish continued to raise the issue with Jumbert, she did not file a grievance until 1999. On July 8, 1999, Union President Dale Sroka sent Jumbert a letter concerning the overtime procedure. The following month the informal system was discontinued and employees were instructed that they had to work an 8:00 a.m. to 4:30 p.m. shift as outlined in their collective bargaining agreement.

Elder resigned on February 23, 2000. Cristen Stevens assumed her payroll duties. Shortly thereafter, Stevens discarded all the files related to the informal compensatory time program. According to her trial testimony, she did not tell anyone of her decision and knew nothing about Kish's grievance or any potential litigation. She acted because the informal program had been discontinued.

Before this occurred, Sroka warned Jumbert that Kish intended to pursue her complaint with the Department of Labor's Wage and Hour Division. The City's labor relations manager informed

*Nos. 02-3631/3632*
*Kish v. City of Akron*

Sroka that the City would not reimburse Kish for any time owing under the informal system despite being told that she intended to pursue legal remedies.

In April 2000, attorneys for plaintiffs sought personnel records for compensatory time and discovered that they had been thrown away. Plaintiffs filed a complaint against the City and Jumbert on August 10, 2000, alleging violations of the FLSA; unlawful retaliation for pursuing their FLSA claims; destruction of public records, Ohio Rev. Code § 149.351; and spoliation of evidence. The matter went to trial and on December 10, 2001, the jury returned the following verdict:

As to plaintiff Kish:

FLSA claim: $493.35 for unpaid overtime;
Public records claim: $480,000.00;
Spoliation claim: $500.00 actual damages; $480,000 punitive damages;

As to plaintiff Elder:

FLSA claim: $414.98 for unpaid overtime;
Retaliation claim: defense verdict;
Public records claim: $380,000.00;
Spoliation claim: $500.00 actual damages; $380,000 punitive damages.

A district court[2] order partially granting defendants' motion for a new trial or remittitur eliminated the damage award for destruction of public records on the basis that the nearly identical awards for spoliation and destruction of public records constituted an impermissible double recovery. This appeal followed.

## II.

**1. Reduction of Jury Award**

---

[2] The parties consented to have a magistrate judge preside over the proceedings below. 28 U.S.C. § 636(c)(1).

*Nos. 02-3631/3632*
*Kish v. City of Akron*

We begin our analysis by considering whether the reduction in the damages awarded by the jury was appropriate. Plaintiffs take issue with the district court's conclusion that the damages awarded under Ohio Rev. Code § 149.351 must be eliminated because they duplicated those awarded for spoliation. While the City obviously defends that decision, it also argues that Ohio Rev. Code § 2744.05(A) prohibits an award of punitive damages against a municipality and, alternatively, that the award of punitive damages must be reduced because it is so "grossly excessive" that it "enter[s] the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." *BMW of North America v. Gore*, 517 U.S. 559, 568 (1996).

While we agree that the punitive damages awarded to plaintiffs must be stricken, we do not base our conclusion on either a theory of double recovery or upon Ohio Rev. Code § 2744.05(A). Instead we look to the following tenet of Ohio law: "In the absence of a statute specifically authorizing such recovery, punitive damages can not be assessed against a municipal corporation." *Spires v. City of Lancaster*, 502 N.E.2d 614, 615 (Ohio 1986) (syllabus) (citing *Ranells v. Cleveland*, 321 N.E.2d 885 (Ohio 1975)).[3] Thus, for punitive damages to be available to plaintiffs in their spoliation claim, they must cite to a specific statute authorizing such an award; they have not done so, nor have they cited to a single Ohio case in which punitive damages against a municipality were affirmed absent a specific statute. Accordingly, the award of punitive damages against the City must be vacated.

---

[3] While *Spires* arose before the enactment of Ohio Rev. Code § 2744.05(A), there is nothing to suggest that the validity of its holding was altered by the enactment of the statute.

*Nos. 02-3631/3632*
*Kish v. City of Akron*

Because we hold that the award of punitive damages are precluded as a matter of Ohio law, we need not reach the City's Fourteenth Amendment argument concerning excessive damages.

## 2. Spoliation Claims

In its cross-appeal, the City contends that the district court erred when it declined to grant the City judgment as a matter of law with respect to the spoliation claims. This court recently explained the standard of review applied in this situation:

> We review the denial of a motion for judgment as a matter of law *de novo*. *McCurdy v. Montgomery County*, 240 F.3d 512, 516-17 (6th Cir. 2001) (citing *Cook v. Am. S.S. Co.*, 53 F.3d 733, 740 (6th Cir. 1995)). Fed.R.Civ.P. 50(a)(1) states that "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," then judgment as a matter of law for the opposing litigant is appropriate. The motion "may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence." *McJunkin Corp. v. Mechanicals, Inc.*, 888 F.2d 481, 486 (6th Cir. 1989). An appeals court is not to "weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury." *Toth v. Yoder Co.*, 749 F.2d 1190, 1194 (6th Cir. 1984). Instead we must view the evidence in the light most favorable to the opposing party, drawing all reasonable inferences in its favor. *Ibid.*

*Bowman v. Corrections Corp. of America*, 350 F.3d 537, 544 (6th Cir. 2003).

In Ohio, a spoliation of evidence claim has the following elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.*, 615 N.E.2d at 1038. According to the City, plaintiffs failed to come forward with sufficient evidence on each of these elements to merit submission to the jury.

The district court rejected the City's sufficiency of the evidence challenge in these terms:

*Nos. 02-3631/3632*
*Kish v. City of Akron*

> According to Ms. Stevens, one of her first actions was to destroy plaintiffs' records. Plaintiffs had evidence to contradict this statement showing a much later record destruction date, but in any event, the destruction of employee records by the record custodian was contrary to City policy. Even if as Ms. Stevens claims one of her first actions as record custodian was to destroy plaintiffs' employment records, this action was at least unusual. What followed, or more precisely did not follow, was significant. After the record destruction was admittedly discovered, no disciplinary action or even an admonition was given to Ms. Stevens. Her supervisor expressed no displeasure with her actions, nor did any higher ranking City official express distress. Plaintiffs had established that higher ranking City officials had knowledge of probable litigation involving plaintiffs' overtime dispute. The jury simply found that Ms. Stevens' testimony was incredible especially since no wrong-doing on her part was ever acknowledged. The City's comment that it is nigh impossible to take action against a civil service employee simply did not persuade. Not even an unfavorable comment was entered in Ms. Stevens' personnel files after the City admitted that it discovered what Ms. Stevens had done. Inferences from the evidence could lead the jury to find the records of the two provocateurs were destroyed in an ill-conceived effort to terminate the prolonged overtime pay dispute. Therefore, the jury could infer the worst, that the spoliation of evidence was both due to pending or probable litigation, was the result of a willful destruction of evidence designed to disrupt the plaintiffs' case, and had been authorized by an official over Ms. Stevens (or the destruction was done by a higher ranking official) who was protecting her from adverse employment action even at the time of trial on condition she continue the deception.

Order, May 2, 2002 at 10-11.

Perhaps the best way to approach this issue is to look first at the evidence that plaintiffs contend makes their case, which the district court alluded to in the preceding paragraph. During trial, Kish testified that she contacted the Department of Labor's Wage and Hour Division and a private attorney in August 1999. She also indicated that she "told the union" and Vicki Elder that she had taken these steps.

As discussed earlier, union representative Sroka informed the City's Labor Relations Officer James Masturzo that Kish had contacted both the Department of Labor and a private attorney.

- 7 -

*Nos. 02-3631/3632*
*Kish v. City of Akron*

According to Sroka, Masturzo told him, "[S]he can do what she needs to do. . . I'm not paying her." Moreover, Sroka told Masturzo that Kish had contacted an attorney "two or three times." Jumbert was present at one of these meetings.

During his testimony, Masturzo denied that Sroka ever told him that Kish had contacted either a governmental agency or an attorney. When pressed about this denial during cross-examination, Masturzo backed off somewhat: "You know, [Sroka] might have told me [about Kish's actions], but, you know, I tried to resolve the issue."

Viewing, as we must, the evidence in a light favorable to plaintiffs, we conclude that, even if Masturzo had stuck to his original denial, the testimony of Sroka would have been sufficient to create a factual issue with respect to knowledge of pending litigation.

The sufficiency of the evidence needed to create a jury question concerning whether representatives of the City willfully destroyed the compensatory time records in order to disrupt litigation represents a much closer call. Ms. Stevens took over the duties of records retention clerk for the Division and testified that she discarded the records because the informal program had been scrapped. According to her, five years worth of records were discarded. Stevens indicated that those records were contained in a single file cabinet maintained by the payroll clerk.

Plaintiffs point out that Stevens' testimony is inconsistent with their own. Kish testified that only two years of records were contained in the file cabinet alluded to by Stevens; older records were kept in a filing cabinet in the rear of the office. Kish indicated that when she asked John Elsey, Stevens' supervisor, to find her personnel records on April 7, 1999, he indicated that they were not in either the file referred to by Stevens or in the back file cabinet. Elder, who actually maintained

- 8 -

*Nos. 02-3631/3632*
*Kish v. City of Akron*

the compensatory time records prior to Stevens, confirmed Kish's testimony with respect to where the records were kept.

During the April 7 telephone conversation with Elsey, Kish also recalled that she was told that only her records and those of plaintiff Elder were missing from the files: "[H]e said that mine and Vicki's were not there, everyone else's were." Kish emailed Elder the substance of the conversation with Elsey on the same day. For his part, Elsey confirmed the request for the files: "I just did a cursory look through and there were no files at that point." He assumed that the files were missing because plaintiffs no longer worked in the Division. When Elsey questioned Stevens, however, she told him that she had discarded *all* of the files because the program had been abandoned. He denied telling her to do so.

Plaintiffs point to other inconsistencies that they believe bring the City's witnesses' credibility into question. For instance, according to plaintiff Elder, Stevens directed her "downtown" to the City's personnel office when she first inquired about her records. After checking with personnel, however, she returned to Stevens who told her, "[S]ue me, sue the city, I don't care what you do. I don't have [the records], they were destroyed." In addition, Stevens had been trained as a records retention clerk and a jury could infer that she would have known that the destruction of the records was in violation of policy.

Lastly, neither Jumbert nor Stevens was ever disciplined for the destruction of the records, implying that the destruction was sanctioned by the City.

The City argues that it cannot be held liable for Stevens' destruction of the records because she was not acting within the scope of her employment when she did so. The City points out that

*Nos. 02-3631/3632*
*Kish v. City of Akron*

spoliation of evidence is an intentional tort; an employer can only be held liable if the "behavior giving rise to the tort . . . facilitate[d] or promote[d] the business." *Byrd v. Faber*, 565 N.E.2d 584, 588 (Ohio 1991) ("In other words, an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business.").

The district court rejected this argument:

> The Court did instruct the jury to consider whether the record destruction was unauthorized and the City would only be liable if the action was within the scope of employment. The Court's instructions to the jury followed those proposed by the City. They included that the City maintained that the record destruction was an unauthorized act and that the employee's actions must be within the scope of employment. The Court also gave the scope of employment instruction suggested by the City that, "an employee is not within the scope of his or her employment when the employee clearly and completely departs from the services or job that employee was hired to do. When an employee acts solely for his or her own purpose, or solely for the purpose other than the employer, the employee does not act within the scope of his or her employment, and the employer is not liable for the employee's act." (Jury Instruction 69.) The Court finds that the intent behind *Byrd* was conveyed to the jury, as the City had requested.

Order, May 2, 2002 at 12-13.

It is undisputed that the jury was instructed about the scope of employment defense in a manner proposed by the City. This means that the jury credited plaintiffs' theory that Stevens was acting, not in a self-serving manner, but in an ill-advised attempt to help her employer to undermine the plaintiffs' FLSA claims, either on her own initiative or at the suggestion (implied or explicit) of her superiors.

We must view the jury's findings in a highly deferential manner: "If there is *any* credible evidence to support a verdict it should not be set aside." *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990) (emphasis added) (citing *Werthan Bag Co. v. Agnew*, 202 F.2d 119 (6th

*Nos. 02-3631/3632*
*Kish v. City of Akron*

Cir. 1953)). Given this standard of review, we hold that there was sufficient evidence to send the claim to the jury for the reasons outlined by the district court.

### 3. Jury Instructions

The next issue is a subset of the one just discussed. The City contends that the instructions given to the jury resulted in an inconsistent verdict. Specifically, the City argues that Stevens could not have acted within the scope of her employment and with malice at the same time. With respect to the statutory claim, the district court gave the following guidance:

> An employee is not within the scope of his or her employment when the employee clearly and completely departs from the services or job that employee was hired to do. When an employee acts solely for his or her own purpose, or solely for the purpose of a person other than his or her employer, the employee does not act within the scope of his or her employment, and the employer is not liable for the employee's act.
>
> . . . .
>
> [A]n employer may be liable for malicious injuries or damages caused by the employee acting within the scope of employment and with the intent to carry out the employer's purposes.

Turning to spoliation, the court explained punitive damages to the jury in these terms:

> . . . You may decide that the defendant is liable for punitive damages if you find by clear and convincing evidence that the City of Akron authorized, participated in, or ratified acts or failure to act of an employee that demonstrated spoliation to avoid liability for plaintiffs' claim of failure to pay overtime wages. Plaintiffs must establish the act of spoliation was inextricably intertwined with plaintiffs' claim for unpaid wages. The action by the City of Akron must be due to malice or oppression.
>
> . . . .
>
> Malice includes that state of mind under which a person's conduct is characterized by hatred, ill will, or a spirit of revenge, or a conscience disregard for the rights and safety of other persons that have that has [sic] a great probability of causing substantial harm.

*Nos. 02-3631/3632*
*Kish v. City of Akron*

The City raised this argument in its motion for a new trial and the district court rejected it on the theory that the jury could have inferred that "the spoliation of evidence was both due to pending or probable litigation, was the result of a willful destruction of evidence designed to disrupt the plaintiffs' case, and had been authorized by an official over Ms. Stevens (or the destruction of records was done by a higher ranking official) who was protecting her from adverse employment action even at the time of trial on condition she continue the deception." Order, May 2, 2002 at 11.

The verdict is not inconsistent if one assumes that the jury found that Stevens acted at the direction of a supervisor and destroyed the records to prevent plaintiffs from prevailing in their FLSA claims. While this finding may have limited support in the record, it cures the inconsistency problem. Given the deference we must accord to the jury's factual findings, we adopt the reasoning of the district court on this issue.

### 4. Damages under Ohio Rev. Code § 149.351

Finally, the City argues that statutory damages should have been capped at $1,000 because the destruction of the records occurred in a single violation. The Supreme Court of Ohio accepted our certification of this question and rejected the City's position. *Kish v. City of Akron*, 846 N.E.2d 811 (Ohio 2006). Accordingly, the jury's award of damages pursuant to Ohio Rev. Code § 149.351 is affirmed.

### III.

The judgment of the district court is **vacated** and the cause **remanded** for an entry of judgment consistent with this opinion.